We're here with Culloch v. Board of Trustees Good morning. Good morning, Your Honors. Pardon me. May it please the Court, my name is Alisa Pyrich from the firm of Jardine, Meisner & Susser, and I represent Kevin McCulloch, the plaintiff the anti-cutback provision of ERISA, which is found in section 204G, 29 U.S.C. 1054G. That section makes it unlawful for a plan administrator to decrease, eliminate, or reduce an accrued benefit that has already vested in the plan participant. The district court below found that this kind of claim was one that required exhaustion of administrative remedies and we submit that that was incorrect under the law that even this circuit now seems to accept that says that only claims that for benefits are subject to the judge-made requirement of exhaustion of administrative remedies. Why aren't these for benefits? That's all your client is interested in, right? This is not a claim for benefits because the crux of the claim is about the violation of the anti-cutback provision. And the violation of the anti-cutback provision impacts your client in only one way. Any anti-cutback. And that's reducing the benefits. That's the nature of an anti-cutback claim, inherently. However, it is a right that derives from the statute, not from the terms of the plan. And in fact, every court that has looked at the issue so far has found that an anti-cutback claim, like the kind Mr. McCulloch is asserting here, is a statutory claim and therefore not subject to the requirement that administrative remedies be exhausted. That's a sensible ruling when you consider the reasons why the exhaustion of the administrative remedies doctrine exists. The purpose of that doctrine is to allow the question of whether X person is entitled to benefits, be they pension benefits or health benefits or disability benefits, which is determined by what the plan says, to be decided by the people who are experts in the plan. On the other hand... Doesn't the plan have an amendment that says you don't win? The amendment is what is necessary to state an anti-cutback claim. Anti-cutback claims arise when there's a benefit that exists to which the participant or beneficiary is entitled and there must be an amendment to the plan that takes away that benefit for there to be an anti-cutback claim. In this particular instance, it's a fairly unique situation because you actually don't even have to look at any part of the plan except for Amendment 12 to determine whether or not a cutback happened and the statute was violated. The right in question that Mr. McCulloch had was a right to have his pension calculated in a certain way. That right arose not from what the plan said but by operation of law when in 2008 the plan we're talking about became a multi-employer plan under ERISA. Now, the ERISA statute itself tells us what happens when a plan becomes a multi-employer plan and one of the most important things it tells us in 29 U.S.C. I'm not going to find it but we've cited it, there it is, throughout our brief. One of the most important things the ERISA statute tells us is that when you convert to a multi-employer plan that conversion is for all purposes under ERISA and under the Internal Revenue Code. Well, that's pretty clear what Congress intended. It's rare that they're that clear for us. All purposes means all purposes. And therefore, the moment it was converted to a multi-employer plan, the right to have his pension calculated in a particular way without aggregation of his benefits under Section 415 of the Internal Revenue Code kicked in as a matter of law. And when it kicked in, what did the law say? The law said that benefits under multi-employer plans are not subject to aggregation. Did it say that the plan may not adopt a no-aggregation amendment? That section of the Internal Revenue Code does not. That is addressed by ERISA, which says that the plans that boards, plan fiduciaries, must effectuate, interpret, and adopt amendments to the plan that are in keeping with the ERISA statute. Therefore, because the conversion to a multi-employer plan under ERISA incorporates, by reference, the Internal Revenue Code, ERISA itself says that the plan can't do something contrary to what the Internal Revenue Code says about multi-employer plans or what ERISA says about multi-employer plans. Are you saying that a multi-employer plan can under no circumstances prevent aggregation? Require aggregation. Require aggregation. Can under no circumstances, I'm sorry, require aggregation? It would certainly be able to require aggregation to the extent that aggregation was permitted by, say, a regulation of the IRS concerning multi-employer plans or an ERISA regulation or similar or something statutory. If the law changed, they'd be able to consider aggregation, you know, require aggregation. No, I didn't ask you if the law changed, would they be able to do something? But right now, as written, it says multi-employer plans, conversion is for all purposes under ERISA and the Internal Revenue Code, and the Internal Revenue Code says that multi-employer plans are not subject to aggregation. So unless the statute or the operating regulations carve something out, no. We haven't exactly used the statutory language that you're paraphrasing. Give me just a second. All right. The all purposes under the Act and under the Internal Revenue Code is found in 29 U.S.C. Section 1002-37-G2, and we have that in the special appendix. All right. Thank you. I'm glad to have that because I have it right in front of me. Okay. And I don't read it the way you read it. It says, and I quote, an election under this subparagraph, parentheses, my parentheses, that means an election to become a multi-employer plan, correct? Yes, and that is what the plan here did. Right. An election under this subparagraph shall be effective for all purposes under this chapter and under the Internal Revenue Code of 1986 starting with any plan year beginning on or after January 1, 1999, et cetera. Now, it seems to me that section provides when the election to become a multi-employer plan takes effect but doesn't say that, it doesn't say anything more than that. It says it takes effect for all purposes under ERISA and under the Internal Revenue Code. That is to say, on a particular date, this is when this election becomes binding, for want of a better term. That's all I think it says. Well, in this case, Your Honor, it would be a nullity because the election was not made until 2007 or 2008. So your reading of that subsection as only creating an effective date for when the multi-employer plan conversion would come into play ends up being meaningless when you have a conversion made after that date. And the date was? In this instance, the plan started the process of conversion in 2007. The actual conversion was approved by the necessary regulatory authorities in 2008. Okay, and therefore? And therefore, merely saying that that's an effective date doesn't make a great deal of sense when you're dealing with plans that convert a decade or so after that effective date. Sure, but so what? Even on the assumption that it's a nullity as applied to this conversion, because the conversion took place later than the planned year ending before January 1, 2008, the fact remains that it doesn't say anything approaching what you say it means. The language... Which is, you construe it to mean that the conversion to a multi-employer plan meant that it adopted lock, stock, and barrel, all of the rules of 415, immutably for all time. Right? That's your position. Unless there is something that allows... Actually, yes, because there is another statutory section that says once the conversion to a multi-employer plan is made, that conversion is irrevocable. Yeah, that doesn't say what you say it says either. Where does it say that if you go to a multi-employer plan, the multi-employer plan may not adopt a provision that wouldn't be consistent with IRC 415? There would be no reason to include the language for all purposes in the statute unless it was referencing and taking into account the statutes that it references. For all purposes, under this Act and the Internal Revenue Code, it has to have a substantive meaning. Yeah, sure, it has a substantive meaning. If the conversion was for a planned year beginning on or after January 1, 1999 and before January 1, 2008, the effective date is controlled by this paragraph. It's controlled by this paragraph for every part of ERISA. That's the for all purposes under this chapter language. In your words, because this plan conversion was later than the planned year 2008, it had no effect on this conversion, but in either case, indeed, you called it a nullity. If it's a nullity as to this conversion, it's got nothing to do with Internal Revenue Code 415. Even if this conversion were within the relevant time period, all it does is to provide the effective date of the conversion. Given that multi-employer plans are treated under different rules, under both ERISA and the IRS Code, the Internal Revenue Code, the for all purposes has to have a substantive meaning. If there weren't different rules governing singular— It does. Your first proposition is it's a nullity as to this conversion. If you're right on that, then we don't have to worry about for all purposes. But even if it were not a nullity because this conversion occurred within the relevant time period, it simply says that whenever in ERISA, the effective date of an election to become a multi-employer plan is in issue, it's controlled by this paragraph. Your Honor, I may not have explained myself clearly when I said about it being a nullity. What I meant was that my understanding of your interpretation of this paragraph is that it was intended only to set an effective date. And only setting an effective date doesn't make sense for plans that didn't convert until a decade later. So that reading, which is why I say that that reading doesn't make sense, given the plain language of the statute. I'm not saying that it's a nullity in that it doesn't apply. What I'm saying is that if we only treat it as an effective date, then the for all purposes language lacks meaning and lacks purpose, which is not the way a statute should be read. It also does not necessarily mean that aggregation can't happen if something else in the IRS code or in ERISA lets it happen. But in this particular case, with this particular plan, there was nothing else in ERISA and nothing else in the Internal Revenue Code that authorized the SEIU plan and board to take back the effects of the conversion to a multi-employer plan. You reserved some rebuttal? Yes, I did, Your Honors. Can I just ask you very quickly, if we were to decide exhaustion is required, is it now available or is it over? After the ruling from... Is it available or are we finished? There is no administrative remedy that specifically applies to challenges to the statutory, whether or not a certain amendment is a statutory violation. In a different, in addition... I'm sort of getting into the merits. If we said you must exhaust, is there a place for him to go to exhaust now? No, there is not. There is not. Okay. Now, may I explain that? Because it is something that came up after the events that went into the record. Mr. McCulloch also put in a letter trying to see if he could, if there was an avenue for an administrative appeal, if he was required to exhaust. And he was told, no, your appeal is denied. So even if you... So in other words, there's no avenue, but you lost. Yes. And that's not in the record. Because it happened after briefs were submitted and... We have to decide this case on the basis of the record. Yes, but he asked a question that needed an explanation. Well, I understand. And it is certainly, if Your Honors were interested in that, we could certainly supplement the record, but I... Are you saying that there is no open avenue because the time has passed for an inquiry or for a determination? Or are you saying it is because a ruling has already been rendered rejecting your claim? Or are you saying it is because a ruling has already been rendered rejecting your claim and there is no avenue for appeal? There is no... Pardon. Go ahead. I thought you were done. There is no specific avenue for challenging an amendment to the plan on the basis that it violates ERISA. There are challenges for denial of benefits. Let's just take denial of benefits. Let's take it hypothetically. Yes. We have a denial of benefits. It's a different case, all right? It's a denial of benefits. If it is denied, is there an avenue of appeal? Yes. Then we may take an appeal. Then we may file a lawsuit. To what? To the district court under ERISA. Oh. And there is a... Further administrative appeal. If... Okay. I may have misunderstood. Here is the way the process works for benefits claims. A claim for benefits is made. It is decided by whoever the claim fiduciary is under the plan. If the beneficiary looks at the claim fiduciary's decision and wants to appeal it, in a claim for benefits there is a procedure in the plan that he or she must follow. And what is it? It varies in different plans. So I can't give you a global in all situations he does this, but usually it is the submission of... What can this claimant do? Never mind all claimants. What can this claimant do? This claimant, there is nothing in the plan that specifically applies to challenging the amendment as... Look, you have very cleverly and appropriately, given your obligation to your client, tried to couch this claim as something other than a claim for benefits. But, indeed, it's a claim for benefits. Because what he wants at the end of the day is more money. Excuse me. He wants more money. And there's no doubt that I want more money is a claim for benefits. Now, at page 9 of Judge Gardefee's opinion, he quotes section 9.04 of the 2010 version of the plan. I'm assuming that that's what we're dealing with, but I don't know. And it provides that the trustees shall adopt a claims and review procedure, which shall specify the manner and form in which applications for benefits under this article 9 shall be submitted and acted upon, and which shall establish a procedure for reviewing claims for benefits that have been denied in whole or in part. Any such procedure shall be subject to amendment from time to time by the trustees, subject only to the requirement that it conform with the applicable provisions of ERISA and the regulations. Now, why isn't it the case that there either is such a claim procedure, or if you file a claim for benefits and you claim there isn't such a procedure, you can ask the trustees, by amendment, to provide a procedure for hearing your client's claim and make whatever arguments you wish to make to them about the bottom line here, which is your client wants more money and thinks he's entitled to it under the plan and for legal reasons quite apart from the provisions of the plan. And make the argument, see what happens, and if he loses, there is then an opportunity to seek review under the statute. Because asking plan administrators or claim fiduciaries to interpret the law as opposed to interpret the terms of the plan is contrary to the whole reason why the exhaustion remedy exists. Interpretation of the law, which means in this case interpretation of the IRS code, ERISA, and specifically Section 204G, which deals with whether something is a prohibited cutback or not, is the province of judges. Now, you're back to the merit. You're saying this is not a case where exhaustion was legally required. That's what you've been saying for the last two minutes. I didn't ask you that. I don't think Judge Kaplan asked you that. You were thrown out for failure to exhaust an administrative remedy. Yes. All I want to know is, is the administrative remedy that you failed to exhaust still available? No, it is not. And why is that? Because there is no, as I've said before, this is talking about claims for benefits, not about a claim about the lawfulness of the statute, and it has already been denied. If in the first instance, before you ever went to court, you had exhausted an administrative remedy, where would you have gone? There is no adequate administrative remedy. Oh, it may not be adequate, but where would you have gone even for an inadequate one? If this were a claim for benefits. Yes, let's start with that. That's a good way to start. If this were a claim for benefits, we would have applied to the Board of Trustees under the claim procedure set out in the RISA. And if they turned you down, is there a further level of administrative appeal? No, there is not. So it's just the trustees? In this instance, with this plan, you go to the trustees, they affirm the denial of benefits or reverse the denial of benefits. And in this case, they have said no to you, right? Yes. Why isn't your argument simply? You said affirm or reverse the denial of benefits. That means there's a denial of benefits first. Yes. And somebody is affirming it. Yes. So you have two tiers. Am I correct? Usually what happens is there's an outcome. I'm not asking you. Right in the context of Judge Newman's question, you said there is a place where they can affirm or reverse the denial of benefits. That means that under the hypothetical, there's a place you go where the benefits are granted or denied. And then there's another place you go where that denial is either affirmed or reversed. Yes, but in this case, because of how the claim arose, there was no application for benefits that was denied. He was already receiving benefits. I thought you said that this claim had already been denied. He was already receiving benefits when the change was made to the multi-employer plan. The amendment was then enacted trying to change it back from being a multi-employer plan. After Judge Gardefee rendered his ruling. They weren't trying to change it back from being a multi-employer plan. As you pointed out earlier, that's impossible. With respect to the aggregation rules, they were trying to change it back, which is in fact unlawful and impossible. By saying you're not subject to aggregation when the IRS code says you are, yes, that was improper. Let's go back to the hypothetical. Somewhere a claim, hypothetical, is granted or denied. Where is that? Who does that? All right. When somebody has a claim on their plan. Yes, when somebody has a claim. Who grants it or denies it? Initially the claim fiduciary. And that would be in this instance who? Is it an insurance company or is it an accounting firm or whatever? It depends on which benefits are in question. These are pension benefits. And I do not recall the entire contents of the plan off of my head. So I do not know who the plan fiduciary was. And the plan fiduciary says yay or nay. Then where would one go, hypothetically, to get that either affirmed or denied? In an ordinary claim for benefits, you file an appeal consistent with the procedure and it goes to the Board of Trustees. Thank you. That's what you're saying cannot now happen. Correct. Is that right? Correct. And why is that and where in the record are we going to find that? Unfortunately, not in the record, because it happened after the decision was made and after the record was sent up. And I only raised it because the question was asked. Yes, I understand. Why and what happened? In fact, what happened here was that your client was receiving benefits from one plan, one plan only. Yes. In September of 2008, the plan explained to him that once he started to get benefits from plan number two, a review would be conducted, right? Correct. McCulloch responded the plan was no longer required to apply the aggregation rule. And asked them to confirm that. And the plan said they would consider it, right? Correct. And then in December of 2008, the amendment was adopted. It's another six years before he starts getting benefits under plan two. True? Correct. And at that point, the plan that we're talking about reduced his benefit under that plan, plan one, in light of the aggregation. Took into account the money he was getting from plan two, right? Correct. And at that point, certainly at that point, he could have made an application for benefits for the difference between what plan one had been paying him before and what plan one reduced his benefits to because of the aggregation. Absolutely right. Isn't that true? No, Your Honor, it is not. Because he was already receiving benefits. The question of the lawfulness of the reduction is a section 204G question. Let's put it in very simple terms. He was receiving $10,075 a month from plan one on the day before he started getting benefits from plan two. True? Correct. And figuratively, the day after, he starts receiving $9,007 from plan one instead of $10,075. Right? Correct. And he could have written them a letter and said, I hereby apply for benefits in the amount of $10,075 rather than $9,007 because I'm entitled to it under your plan and your amendment is inconsistent with the statute. It's an abuse of discretion. You should reconsider it. Ninety-one other arguments he could make. Could have done it. Right? No. Because ERISA law says that that sort of claim is pursued. Does ERISA law say that if he writes that letter, he goes to jail? No, but it says here is how these claims should be handled. There is no procedure for saying your claim is wrong, your interpretation of the law is wrong through a plan administrator claim fiduciary appeal. That is what judges are for. That is what the courts are for. That is why 204G exists. And if he had written that letter, and if the plan said denied, and he had, for whatever reason, but denied, and he had exhausted whatever administrative appellate remedy he had, the next thing he could have done is filed an action under section 502 or 503 of ERISA to recover the benefits, and that would be in a United States district court which would decide any statutory question that was presented. True? It would substantially disadvantage him to do that. Ah. Because the interpretation of the law by the plan administrator is not entitled to deference. Plan administrators only get deference when they're interpreting the plan language. So if the plan's interpretation of the law turned out to be pivotal to the denial, and you go into the U.S. district court, and there's no deference to the plan's interpretation of the law, then there you are in the district court with the benefit to the district court for whatever value it may have of the plan's considered view and de novo review in the district court. What's the problem? It is a departure from the way ERISA cases are handled throughout every other court in the country. And while it is certainly legitimate to impose that rule going forward, saying that somehow McCulloch should have intuited that this court would take a radically different view of exhaustion of administrative remedies than the majority of other courts in the circuit and say that the statutory remedy of 204G requires exhaustion is fundamentally unfair. All right. That's been your whole argument all morning. All I'm trying to understand is, first, can he go to the trustees to seek the money? Either he can or he can't. And first of all, can he or can't he? He cannot. There is no procedure for it. And why? There is no procedure for it. Benefits procedures are not intended to address the violation. He writes to the letter and says, I've been thrown out of district court for lack of administrative exhaustion. You trustees are the people within the administrative chain. And so I'm doing my best to comply with the district court. Here's my claim. Either accept it or reject it so I can go on. Why can't he do that? Because that is not what benefits proceedings are for or intended to be for. And I cannot give Your Honor a better answer than that. You're just saying he's not required to. That's all you're saying. And that's been your argument for a long time this morning. Because fundamentally that is not true. Is he required to? I'm asking, can he do it? And apparently the answer is yes, because you've given me no basis for a no. He can do it. He will get nothing from it. But he can do it. Now we get to the next argument. If he will get nothing for it, is it because the trustees have already rejected his claim on the merits? Have they done that? Not having realized this was going to be an issue, we didn't put it in the record. But to be truthful, as an officer of the court, yes, it's already been rejected. But we don't know that on this record. No, because this was not an issue raised. We have no basis then on this record to dispense with exhaustion because of a futility argument. No, we have not asserted a futility argument because we could not put in front of your honors something that was not in front of the district court. Okay, thank you. Thank you. You've reserved your button. Good morning, Your Honor. May it please the court. My name is Lauren McDermott, and I represent the appellees in this case, which is the SEIU Affiliates Pension Plan. This case is about whether Mr. McCulloch's claim is a plan-based claim or a purely statutory ERISA claim. The record demonstrates that Mr. McCulloch's claim requires the examination and interpretation of the plan document and is therefore a plan-based claim that is subject to ERISA's mandatory exhaustion requirements. I want to start here by addressing some points that were made on the appellant's case related to an alleged entitlement to the non-aggregation of benefits under ERISA. Mr. McCulloch does not have a substantive right to the non-aggregation of benefits under ERISA. The right that he is addressing arises under IRC section 415F, which actually has not been expressly incorporated into the terms of ERISA. This is unlike many other IRC provisions, which have been expressly incorporated into the terms. Maybe you could help me understand or confirm my understanding of 415 and how it relates here. By virtue of 415, as I understand it, pension plans that meet certain criteria are afforded favorable tax treatment under the code, the details of which are not particularly relevant, right? That's correct. Okay. One of the qualifications, and I'm testing my own understanding, one of the requirements of 415 in order to qualify for the favorable treatment was an aggregation rule. If the plan had an aggregation rule, single employer plan anyway, and meets other qualifications, it's entitled to the beneficial tax treatment, but if it didn't, it was not. Is that accurate? Both ERISA and the IRC provisions are minimum requirements, not the absolute requirements. In this case, yes, 415 sets forth certain aggregation requirements for single employer and multi-employer plans. If a plan complies with those aggregation requirements or has a more restrict aggregation requirement, which is what happened in this case, even though the plan switched to multi-employer plan status, it retained the single employer aggregation rules. These 415 limits are maximum benefit limits. What the IRC is doing is it's essentially setting a ceiling for the maximum benefits in which a participant can receive under the plan. It's basically saying if you're paying gigantic pensions to people, your plan isn't going to get this favorable tax treatment, whatever it is. Correct. And the only, the provisions of the IRC code that are not expressly incorporated into ERISA are, the enforcement of those provisions lie solely within the IRS's discretion. And in this case, the IRS actually approved amendment number 12, the amendment that's at issue in this case. Okay. So we then get to the point where the formerly single employer plan, Mr. McCulloch being a beneficiary, converts to an MEP. And it applies to the IRS for approval of the amendment, which is forthcoming. And the consequence of all of that is simply this, that by virtue of the IRS's approval, it continues to be eligible for favorable tax treatment under, by virtue of 415. That's correct. Is that right? And that's about it, right? Yes. I mean, yes, that's correct. This is, it's about favorable tax treatment, and this is an issue that is exclusively within the IRS's discretion. And it's your position that both by virtue of IRS approval, and I suppose by the fact that 415 sets a minimal level of stringency with respect to maximum aggregate pension income, the change to an MEP would not, by virtue of anything that happened with respect to aggregation or no aggregation, affected nothing but the tax treatment of that plan. It affected nothing but the tax treatment of the plan in our case, because the plan language at the time that the plan switched from single employer status to multi-employer status, the trustees interpreted the plan language to maintain the single employer aggregation rules despite the switch to multi-employer status. And then they added the amendment. And the amendment was a clarification of that interpretation. What did that plan language that was so interpreted, what did it say? Let me find the exact. I don't have the exact. Oh, yes, I do. It's at joint appendix 150 is where the plan provision that was in effect at the time that the plan switched from single employer status to multi-employer status. Joint appendix 150. The regular joint appendix. If I take it in subparagraph M. That's correct. Subparagraph M on JA 150, it says, if a participant also participates in another defined benefit plan of a participating organization, such plan will be combined with this plan in accordance with section 415F of the IRC for purposes of determining compliance with the limitations in 415B of the IRC. So the trustees, when they looked at that provision, they looked at a number of factors. First, they looked at the fact that the language says that the benefits will be combined. The trustees read that to mean that it was a mandatory requirement rather than permissive, and that the reference to section 415F described how these benefits should be calculated rather than including any exceptions that 415F may have. And also, at the time that this plan language was drafted, section 415F actually did not have the same multi-employer carve-out for the aggregation of benefits. It required the aggregation of benefits. So are you now just telling us, just the last few minutes, under a proper interpretation of the plan, he doesn't get a benefit? That's correct. Have the trustees ruled on that? The trustees have ruled on that subsequent to the record in this case. So after the case was dismissed below, Mr. McCulloch applied through the appeals process to the trustees, and the trustees have now ruled on his case. And rejected his plan interpretation? His plan interpretation, because— Can he now challenge that rejection in court? Yes. He can? He can. Was there an appeal process within the plan? Yes. Did he avail himself of it? He availed himself of it, but not within the time limits that the plan prescribed. So the trustees ultimately rejected his claim based on untimeliness. As untimely, so they didn't decide the merits. Well, they also spilled ink on the merits in their decision as well. And again, this all happened after the case was dismissed in the district court. Was there ever a time when Mr. McCulloch collected from one or both plans in an amount that exceeded $10,075? I'm not sure of the actual dollar amount, but he never received a benefit that was not aggregated. So he received, he was receiving for a period of time— He never received a benefit that was not aggregated, and therefore your adversary's argument is that the cutback is that it should have been. Correct. It should have been disaggregated. And that's why it was cut back? Well, it should not have been aggregated when he started receiving benefits from this other pension plan, which was after the amendment. But when he started receiving benefits from that other pension plan, the benefit from this pension plan, the one now at issue, was reduced to reflect aggregation. That's correct. He never received his benefits when they were not aggregated together, the combination of the two plans. I'm sorry. You're on. In the district court, at the time the court said, in agreeing with you, this case is dismissed for failure to exhaust, what could he have then done to exhaust? He did what he could do at that time to exhaust, which was he filed an appeal with the trustees, and then the trustees responded to that appeal. And did they say it's untimely? Yes. Were they right? Yes. There's a 90-day— You mean this was dismissed for failure to do something which could not have been done? Well, it could have been done at the time that his benefit was allegedly reduced. But by going to court, he unduly delayed his administrative route. Is that it? Yes. So he had 90 days from when any benefit denial took place, which in this case would have been the aggregation of his benefits, to file an appeal with the trustees. He did not do so. Instead, he went directly to court. And then the district court dismissed the case for failure to exhaust, and his later appeal was then denied for being untimely. So it's a gamble. If you think you don't need to exhaust, but you're wrong in the view of some court, you'll lose because you will no longer have that exhaustion remedy available. Is that right? That's correct. I mean, it would be our position that every grant—I mean, the plan takes a position that every grant of a benefit is also a denial of a benefit. So if you have an issue with— You don't get any tolling by going to court? No, not under the plan. And I haven't seen any law that says that there would be a tolling as well. Well, normally when a court says you didn't exhaust, certainly in the prison context, we say you didn't exhaust, meaning go exhaust. And they do it. And then the administrative process unfolds, and you either win or lose, and if you lose, you no longer have an exhaustion barrier. But you're saying ERISA doesn't work that way? I do not believe so, no. And Mr. McCulloch did go back to the trustees, and again, the trustees issued their opinion on his appeal, both as being untimely as well as the merits. And the merits. That's correct. Oh, all right. Well, let me just pursue that a minute. If on the merits they said your view of the plan is wrong, accepting the idea you've got to interpret the plan, but you're just wrong, then why is an exhaustion futile? Well, Mr. McCulloch never made a futility argument regarding exhaustion.  Is that why he waived it? He's forfeited it? Yes. I mean, the Second Circuit is clear that you have— When we find out in the course of an appellate argument that the trustees on the merits, in addition to timeliness, have rejected the plan argument, it can't occur to us that exhaustion is futile? Well, in the Second Circuit, in order to get the futility exception to the general exhaustion requirement, the plaintiff is required to both plead and prove it. And Mr. McCulloch simply did not do that in the district court case below. I mean, he has the ability now to go back to court based on the trustees' new interpretation. However, I'm not saying that the trustees are waiving their argument that their interpretation of the language is correct on at least part the fact that it was untimely. And you're here resisting any opportunity for him to go back to the trustees now? That's correct. He's already gone to the— Because he's already exhausted, and yet here you are defending an exhaustion dismissal, a dismissal for failure to exhaust. He only exhausted after his case in the district court was dismissed, which was— And that's the timeliness issue. Which is the timeliness issue. If we were to say to you, well, why shouldn't we simply vacate the decision below and remand, what's your answer? I think that that would be essentially pleading and trying to prove an argument in the case below that the plaintiff never made. Mr. McCulloch never asserted that exhaustion would be futile for any reason. And based on that decision, the district court dismissed his claim. Because we now know it would be futile. You know it would be futile, right? Yes. Well, I don't want to say, yes, that it would be futile, because at least now that he's gone through the administrative process, the trustees have been given an opportunity to interpret the plan language that's relevant and to develop an administrative record about their interpretation, which are the underlying goals of why exhaustion is required in the first place. Thank you. Thank you. Here we go. Let me first apologize to the court for the fact that we did not believe that we could send the, you know, a new fact that wasn't in front of the district court to you. But by the same token, when I did not anticipate being asked about it, I think we were both believing that the subsequent administrative letter was something that was not properly to be considered. You were both right. And I will therefore make the suggestion that if Your Honors actually are interested in it, maybe we should put it in front of you and do a supplemental briefing. Just why shouldn't a plan enforce time limits on the time to challenge benefits and if benefits are denied on the time to appeal? I mean, plans have to have accounting rules. They have to make actuarial estimates. Some of these issues could involve vast sums of money. And if you don't establish your right on a timely basis, the accounting and actuarial assumptions of the plan could be disrupted. So what was wrong with their setting time limits for you to make applications for benefits, assuming, putting aside your other argument, assuming that this is an issue involving benefits? There's nothing wrong for time limits being set. As you, for all the reasons that you mentioned, time limits are necessary. However, this is a fairly unique case that put Mr. McCulloch in what we're now finding is something of a catch-22 position. He, the other, your adversary is arguing he's fallen between two stools, essentially. And that is correct. And it should not happen that way. Have the time to administratively appeal run the day you went to district court with your complaint? I will have to take a quick look at something in the record to answer that question, if you can allow me that moment. If it won't, it's going to be done quickly, I guess. All right. The letter telling him about the cutback was September 9th, 2014. The complaint in this matter was filed on? November 24th. Thank you. So 90 days from September 9th. If I could do math, I wouldn't be a lawyer. Sometime in December. So no, it had not yet run. It had not run. But he was acting in good faith on the fact that there was a specific statutory section that said this is a statutory claim. But you as the lawyer were betting, if not the House, at least the benefit, on your confidence that exhaustion was not required. It was. Because by the time you got a ruling from the district judge, the 90 days had expired, right? It was a sound bet at the time because every single court that had looked at the issue said that no exhaustion was required for 204G claims. But it's okay. Well, it was a bet that you thought was supportable by some precedent. There are no cases to the contrary. So when you, as a lawyer, looking at an instance where every court that has spoken on the issue says do X. Was there some, is there, maybe something I'm missing here, is there some disadvantage, even as confident as you were, is there some disadvantage to going to the administrators, to the trustees at that point, just to be sure you don't get into what you call a catch-22? There's the inherent. Tactically, would you have lost something? Well, yes. There is both the cost and the logistical issues of fighting a war on two fronts. There's. Oh, you do that all the time. There's, here is the, there's the possibility of inconsistent arguments and inconsistent results. It is. But you didn't have to fight on two fronts. You could have said to the district judge, just extend the schedule. This is before the board of trustees. We may win. And that would move this case. Relax. And, you know, we do it every day. More than once. But there was a big risk to you, I think, perhaps. And it was this. You were betting the farm on this being a 204G statutory claim. But there's another way to view this claim. And that is that it's a benefits application. And you, perhaps, were very concerned about the fact that if you pursued the administrative route, you were going to get a ruling couched as a denial of benefits and based on an interpretation of the plan. And you might well have been concerned that the trustees' interpretation of the plan against you, if that's the way it had turned out, would have been either binding or something to which a district court would be obliged to give deference. And you decided, and I'm not putting this in pejorative terms or anything like that, but you as counsel perhaps decided, and I might have made the same judgment myself in your shoes, better off go to the district court, take my chances without a determination by the plan, couch this as a purely statutory claim, which maybe flies or maybe doesn't fly, and my chances are better in the district court. Not an unreasonable way to view it. I'm not saying that's the way you personally viewed it. It's a way a competent lawyer might have viewed it, right? Your Honor, I feel uncomfortable answering that question because it's beginning to ask about what our strategy and thoughts were when we were trying to decide what to do in this case. I'm asking about whether a competent lawyer reasonably could have viewed it that way, regardless of what your strategy was. I am always impressed by the never-ending creativity of my colleagues, and so, yes, a competent lawyer could have possibly foreseen being in this situation. Well, even if that had happened, or even if that advice had been rejected and you had gone to the trustees and they had said, we're denying benefits because, in our view, the plan doesn't give them to you, okay? They had written an opinion loaded with words about the interpretation of the plan, to which perhaps a district court would have had to give deference. Could you not have then gone to the district court and said what they did is irrelevant because this denial was a statutory-based claim? This was a statutory claim, just as you're telling us today, and ignored the administrative proceeding altogether. I submit that it would have made our taking that position difficult because we would have been immediately, the trustees would have put before the court that, oh, look, they considered this a benefits claim when it was to their advantage, and we would have been in the position of being two-faced. The words without prejudice would have appeared on every sentence. We are confident this is a statutory claim, but because some misguided district judge might one day, or with a court of appeals, think this is a benefit plan, we're putting it before you, to go immediately to court after this proceeding with our, quote, statutory claim. Now, you would have preserved your rights. You wouldn't have just thrown yourself on the mercy of the administrators. Even in so doing, I believe there could have been risks to that that would have been a disadvantage to our client, but again, I'm starting to get into attorney work product, which makes me somewhat uncomfortable. The anti-cutback statute that you're relying on talks about a cutback of an accrued benefit that has vested. Benefit. Yes, and the cases interpreting that section have said that part of what a benefit is can include a method of calculation of the benefits. Yes. And we put forth several cases where a method of calculation was changed, and that was considered a impermissible cutback. So you have a benefit claim. No, because a cutback is different than just a denial of benefits. A cutback is taking away something that already existed. A cutback is an exception in an accrued benefit that has vested. A cutback is a reason for denying benefits. Yes, but it is not itself a denial of benefits. Well, sure it is. You're getting less money. Because what the challenge is for a 204 claim is not the specific benefit of, you know, the specific amount of money that Mr. McCulloch lost or didn't lose. It is the lawfulness of Amendment 12 that is being challenged. And what he is seeking is not give me $1,000, which would be a benefits claim. He's waving that. No, no. What he is seeking is the amendment's unlawful, declare that it's unlawful, and have my benefits calculated with the vested calculation method it should have been calculated by. The other claim for benefits, declare that the way the benefits are calculated is unlawful, recalculate them, and give me more money. That's what a benefit claim is. Because the test for whether or not it's unlawful is found in the statute, not in the terms of the plan. And he is not seeking a specific sum of money. We have arrived where we started. Thank you both. Thank you very much. I'm afraid we've exhausted you. Thank you, Your Honors. We will reserve decisions. But it reminds me of the old story that whenever somebody says it's not the money, it's the money.